## Sneed & McGuire Coal Company v. Legere.

(Decided January 20, 1916.)

### Appeal from Knox Circuit Court.

Mines and Minerals—Props—Duty of Owner to Furnish and Miner to Select and Mark—Effect of Failure of Miner to Mark.—Under

the statute in force in 1912 it was the duty of the mine owner to furnish props and the duty of the miners to select and mark for delivery the props they needed. And where under a rule of the mine the miners were identified by number, and the miner who wanted the props was required to put his number on them, a miner who selected props but put the number of another miner on them, could not hold the company liable in damages for injuries sustained on account of its failure to deliver the props.

BLACK, BLACK & OWENS for appellant.

J. M. ROBSION for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Legere, brought this suit to recover damages for personal injuries sustained by slate falling on him from the roof at the place he was working as a coal miner. On a trial of the case there was a judgment in his favor and the coal company appeals.

The negligence laid as the basis of the action consisted in the alleged failure of the coal company to deliver props which it had been requested to deliver. We may assume that there was sufficient evidence to show that the failure to prop the roof was the proximate cause of the injury, and that the roof was not propped because of the failure of the coal company to deliver the necessary props. And so the question in the case is, was the failure to deliver to appellee the props the fault of the company or the fault of the appellee?

The law relating to props in force at the time the accident happened may be found in subsection 7 of section 2739b of the 1909 edition of the Kentucky Statutes. This section reads as follows:

"Each owner, lessee or operator of every mine to which the mining laws of the State apply, shall provide and furnish to the miners in said mine a sufficient number of caps and props, said props to be sawed square at each end, to be used by said miners in securing the roof in their rooms, and at such other working places where by law or custom of those usually engaged in such employment it is the duty of said miners to keep the roof propped, after the miner has selected and worked the same."

It will be observed that under this section it is the duty of the mine owner to provide the props and to deliver them to the miner after the miner has selected and

marked them. The evidence in this case shows that the coal company had provided for the use of appellee, the kind of props needed, so that the case narrows down to the question, did the appellee select and mark the props that he desired to use and that it was the duty of the coal company to have delivered to him if they had been selected and marked?

Upon this point the evidence shows that the appellee and a miner named Hodge worked near together, one on one side of the entry and the other on the other, and that they used each others props whenever needed; that appellee was injured on Saturday morning about eleven o'clock, and on the Friday afternoon preceding, he told Hodge, to select props and send them in, the props being a mile or more from the place at which appellee was working. Hodge says that on his way out of the mine on Friday afternoon he went to the place where the company kept the props and selected the kind appellee wanted and piled them up near the track on which they would be taken into the place where appellee needed them. That the company had a man named Hibbard who loaded the props on cars after they had been selected and piled out to be taken in to the miners; and that Hibbard loaded the props in the car.

He further said that he told Hibbard to send them in to Legere on the first trip the next morning, and that Hibbard said he would. Hodge put a number on the props but did not remember what number, but said that fourteen was his number, and there is other undisputed evidence in the case that fourteen was not Legere's number. To make this point clear, it should be stated that under a rule of the mine it was the duty of the miners when they selected the props to mark them with their number, each miner having a different number. When the props were marked in this way, the mine employe whose duty it was to take them into the mine could tell from the number what miner to deliver them to.

It is very clear from the evidence that these props were not marked with Legere's number; but counsel for Legere undertakes to avoid the requirement that the number of the miner for whom they were intended should be marked on the props, by the evidence that Hodge told the person, whose duty it was to load them and have them sent in, that they were for Legere. It should also be here noted that Hibbard denies that Hodge told him

that Legere wanted the props or that he knew they were intended for Legere. This witness says that they were marked with the number of Hodge and that the only information he had as to who wanted the props was ascertained from the number on them; that believing from this number that the props were intended for the use of Hodge, and knowing that Hodge would not be at work Saturday, or until Monday, it was not necessary to haul them in early Saturday morning, and so they were not taken into the mine until some time during the day on Saturday, and not taken to the place where Hodge worked until after the slate had fallen on Legere from the roof nearby the place where Hodge also worked, but who was not working that day

If the props had not been numbered at all, and Hodge had told the employe whose duty it was to load and deliver them that they were intended for Legere, and the employe had said he would deliver them to him, there would be much more reason for saying that this direction would take the place of marking the props with the number of the miner than there is under the facts here appearing, because, as we have stated, it is shown that the props were marked but not with Legere's number.

Under the statute, it is not only the duty of the miner to select the props but he must mark them; and it is at once apparent that this way of identifying the miners for whom the props are intended is very essential to avoid confusion and mistake where there are a number of miners constantly needing props.

A question like this was before us in Palmer, Admx. v. Empire Coal Co., 162 Ky., 130, where it was sought to recover damages for the failure to furnish and deliver props. It appeared that the miner had not selected or marked them, and to overcome the effect of this failure on his part, it was sought to show that under the custom of the mine it was not the duty of the miner to select and mark his props but merely to request the foreman to furnish props, which he would always do on request. In holding that an injured miner could not recover damages on account of the failure to furnish and deliver props unless they had been selected and marked by him, or for him, and that a mere request to furnish the props could not be substituted for the statutory requirement, the court said:

"The question, then, is: May the provisions of the statute be changed by custom and liability imposed on the mine owner by the reason of such custom, when, as a matter of fact, the statute itself is not complied with? Here it is sought to recover under a statute by pleading a custom inconsistent therewith. Were we to uphold plaintiff's contention, every case like this would depend, not on the statute which the Legislature saw fit to enact, but on the custom of the particular mine, and the rules of law applicable would vary according to the particular circumstances of each case. The very purpose of the statute was to do away with this uncertain condition, and prescribe with reasonable certainty the duties and liabilities of the miner and mine owner. * * * If the rule were otherwise, it should be applied not only in favor of the miner, but in favor of the mine owner. Suppose under the custom of a particular mine, it was the duty of the miner to furnish props and caps, could it be reasonably contended that such a custom would relieve the mine owner from his statutory duty? We think not. For the same reason the miner himself should not be relieved by the custom from his statutory duty. The only safe way is to have a uniform rule on the subject and to hold that in every case where the statute speaks, it alone should control, and not the varying and changing custom of each particular mine. Since the statute imposes upon the mine owner the duty of furnishing caps and props only after the miner has selected and marked the same, and as there was no evidence tending to show that the decedent selected and marked any props, and as any custom of the mine contrary to the provisions of the statute is void, it follows that the trial court properly directed a verdict in favor of the defendants."

We think this case controls the one we have and that as the evidence shows that the props were not marked with Legere's number but with another number, the fact that Legere's agent, Hodge, testified that he told Hibbard they were intended for Legere and the further fact that Hibbard, pursuant to his request, loaded the props on the car and promised to send them in, are not sufficient to take the place of the statutory requirement, or under the circumstances of this case, to subject the company to liability for failure to deliver the props. As stated in the Palmer case, this was a very important

and useful statute, intended more for the protection of the miner than of the mine owner, because when props are selected and marked, the statute makes it the imperative duty of the mine owner to deliver them promptly, and his failure to do this subjects him to liability for injury caused by such failure.

The purpose of requiring them to be marked with the number of the miner was to avoid the very condition that arises in this case, where there is a dispute between the miner, or rather his agent, Hodge, and the employe Hibbard, as to what was said with reference to these props. The number on the props was especially misleading, and if they had not been marked, we are not prepared to say that the evidence of Hodge would not have been sufficient to take the case to the jury. This question, however, is not before us in this case or necessary to a decision of it, therefore we express no opinion except to say that if the props had not been marked Legere would have had a much stronger case than he has.

We are inclined to think that on the facts shown by this record, the plaintiff failed to make out a case, and that the motion for a peremptory at the conclusion of the plaintiff's evidence should have been sustained.

There was a motion made in seasonable time by counsel for appellee to strike from the record the motion and grounds for a new trial and the transcript of the evidence. This motion was passed, to be heard with the merits, and after carefully examining the record, we do not find any reason why this motion should be sustained. The record shows that the motion for a new trial and the transcript of the evidence were both made a part of the record according to the usual practice.

Wherefore, the judgment is reversed, with directions for proceedings consistent with this opinion.