## Borderland Coal Company v. Kirk, Administrator.

(Decided May 24, 1918.)

## Appeal from Pike Circuit Court.

1. **Master and Servant—Liability for Injuries—Failure to Prop Roof
of Mine—Statutory Requirement—Custom.**—Subsection 5, sec.
2726, Kentucky Statutes, requiring "every workman in need of
props, cap-pieces and timbers to notify the mine forman, or an as-
sistant mine foreman, or any other person delegated by the mine
foreman of the fact at least one day in advance, giving number,
size and length of props, cap-pieces and timbers required, etc.,"
does not in terms impose upon every miner the duty of request-
ing props and doing his own propping, and the custom of the
mine may be proved for the purpose of showing upon whom the
duty of propping devolves without having the effect of changing
the statutory requirement by custom.

2. **Master and Servant—Injuries to Servant—Duty to Prop—Rules.—**
The rules of a mine are not conclusive evidence of the terms of

a contract of employment or the custom of the mine, for they may be waived.

3.  Master and Servant—Liability for Injuries—Assurance of Safety. —A timber man, to whom a coal company has delegated the duty of propping the roof of the mine, is a vice principal and may bind the company by an assurance of safety.

4.  Master and Servant—Safe Place to Work—Assurance of Safety. —It is not necessary that the master or his representative shall assure the servant in terms that the place is safe. It is sufficient if under the circumstances, the acts and words of the master or his representative are in effect an assurance of safety.

5.  Master and Servant—Injury to Servant—Safe Place to Work— Assurance of Safety—Evidence.—Where there was evidence that a timber man, who had been sent to prop the roof of decedent's working place, said as he was leaving the place, "All right, so long," and that this in mining parlance meant that everything was all right, it was a question for the jury whether the language employed amounted to an assurance of safety.

6.  Master and Servant—Personal Injury—Question for Jury—Assumption of Risk—Assurance of Safety.—Where a coal company's timber man had assured the decedent, a miner, that his working place was safe, he had the right to continue his work without assuming the risk; unless the danger was so obvious that an ordinarily prudent person in his situation would have refused to do so, which was a question for the jury.

7.  Master and Servant—Injuries to Servant—Safe Place to Work.— Where the duty of propping devolved upon the mining company and the miner was not injured while removing the coal, it was the duty of the company to use ordinary care to furnish him a reasonably safe place for work by doing the necessary propping, the rule of non-liability if the servant was engaged in creating the danger during the progress of the work, not being applicable.

8.  Trial—Instructions—Duty of Jury to Consider Together—Verdict Contrary to Instructions—New Trial.—Where there is a series of instructions presenting different theories of the case, it is the duty of the jury to consider all of the instructions together, and a verdict contrary to one instruction will not be ground for a new trial where there are other instructions authorizing the verdict, and it can not be said that the verdict is contrary to the instructions considered as a whole.

J. J. MOORE, JAMES P. WOODS and SAMUEL D. STOKES for appellant.

A. J. KIRK and CLINE & STEELE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

C. F. Kirk, as administrator of Wendell Holmes, deceased, brought this suit against the Borderland Coal

Company to recover damages for his death. From a verdict and judgment in his favor for $3,000.00, the coal company appeals.

At the time of his death decedent was twenty-six years of age and he and Peter Lewis were engaged in drawing pillars for the coal company. He and Lewis were "buddies" and were at work on the same pillar. At that time the company had a regular timber man by the name of John Lock, whose duty it was to prop and secure the roof where decedent and Lewis were working. On the morning of the day of the accident, Lewis requested the assistant mine foreman to send the timber man to prop the place where he and decedent were at work. Lock, the timber man, came about eleven o'clock and asked if any timbers were needed. At that time Lewis and decedent were eating their dinner. Lewis then went with Lock and showed him where to set three timbers. One of the designated places was under that portion of the roof from which the slate afterwards fell. Lewis then returned to the entry and he and decedent continued to eat their dinner. After Lock finished his work he said, "All right, so long," meaning that everything was all right. About an hour and a half or two hours later Lewis and decedent returned to work. Cars were then placed and Lewis and decedent, who were about fifteen feet apart, began to load. Instead of setting three timbers, Lock had set only one. The work in which they were engaged was dangerous and slate was liable to fall unless the roof was properly propped. When they returned to the work, Holmes took a pick and sounded the roof and said that it was all right. A few minutes later, the slate fell and killed decedent. The slate would not have fallen if a timber had been set at that place. The company introduced a book of rules which, its manager testified, had been approved by the State Mine Inspector and printed and properly posted throughout the mine. One of these rules provided that each miner should take down the dangerous slate and do his own propping and timbering. It further provided that props, caps and other timbers could be procured by placing an order therefor with the mine foreman or his assistant at least twenty-four hours in advance of the time they were needed, and giving the number, sizes and lengths required.

The same rule called attention to, and quoted the following provision in subsection 5, of section 2726, Kentucky Statutes:

"Every workman in need of props, cap-pieces and timbers shall notify the mine foreman, or an assistant mine foreman, or any other person delegated by the mine foreman, of the fact at least one day in advance giving the number, size and length of props, cap-pieces and timbers required. In case of emergency, the timber may be ordered immediately upon discovery of danger. If for any reason the necessary timbers cannot be supplied when required, the workman shall vacate the place until the timber needed is supplied."

The company's manager was subsequently recalled by plaintiff and testified that Lock was employed as a timber man and that it was his duty to set timbers wherever he thought they were necessary to be set to preserve the lives of the men and the property of the company. He further testified that it was Lock's duty when directed by the assistant mine foreman to set posts at pillar work such as decedent was employed in, and this had been the custom of the mine ever since it began operations.

It is first insisted that both the statute and the company's rules imposed on the decedent the duty of requesting props at least one day in advance, and of doing his own propping, and that the statutory duty could not be changed by custom. Hence it is argued that the company's demurrer to the petition and its motion for a peremptory should have been sustained because there was neither pleading nor proof that the decedent complied with the statute. We have ruled that where the duty of propping devolves upon the miner, he must request props in the manner pointed out by the statute, and that the statutory requirement could not be changed by custom of the mine so as to impose upon the mine owner a liability for failure to furnish props, when the statute itself was not complied with. Palmer's Adm'r v. Empire Coal Company, 162 Ky. 130, 172 S. W. 97; Stearns Coal and Lumber Co. v. Crabtree's Adm'r, 168 Ky. 8, 181 S. W. 615; Sneed & McGuire v. Legere, 168 Ky. 3, 181 S. W. 617. In construing the former statute we also held that the statute did not in terms impose either upon the mine owner or miner himself, the duty of propping, and that whether the duty was imposed upon the

one or the other could be shown by the agreement of the parties or the custom of the mine. We further held that the rules of the mine were not conclusive evidence of the terms of the contract of employment or the custom of the mine, for they might be waived. Old Diamond Coal Co. v. Denney, 160 Ky. 554, 169 S. W. 1016; Eagle Coal Co. v. Patrick's Adm'r, 161 Ky. 333, 170 S. W. 960. The present statute merely provides that "Every workman in need of props, cap-pieces, and timbers shall notify the mine foreman or an assistant mine foreman, or any other person delegated by the mine foreman, of the fact at least one day in advance, giving the number, size, and length of props, cap-pieces, and timbers required, etc." Sub-section 5, sec. 2726, Kentucky Statutes. Fairly construed the statute applies only to those workmen charged with the duty of propping, and does not in terms impose upon every miner the duty of complying with the statute. That being true, the custom of the mine may be proved for the purpose of showing upon whom the duty of propping devolves, and the effect is not to change the statutory requirement by custom. Even if the company's rules imposed upon every miner the duty of doing his own propping, the uncontradicted evidence shows that these rules had been waived, and that it was the custom of the mine, ever since it began operations, to have a timber man whose duty it was to do the propping at such places as decedent and Lewis were required to work. We therefore conclude that the trial court did not err in overruling the demurrer to the petition, or the motion for a peremptory, because of the alleged failure of the decedent to comply with the statute and rules of the company.

Another error relied on is the submission to the jury of the issue of assurance of safety. It is first contended that the timber man, who was an inferior employee, was not authorized to bind the company by an assurance of safety. In reply to this contention it is sufficient to say that in the recent case of Carter Coal Co. v. Hill, 166 Ky. 213, 179 S. W. 2, we ruled that a timber man to whom a coal company had delegated the duty of propping, was vice principal, and that his assurance of safety was in effect an assurance by the company. But it is further contended that the language used by the timber man did not amount to an assurance of safety. It is not necessary that the master, or his representative, shall assure

the servant in terms that the place is safe. It is sufficient, if, under the circumstances, the acts and words of the master, or his representative, are in effect an assurance of safety. Interstate Coal Co. v. Garrard, 163 Ky. 235, 173 S. W. 767. Here the timber man had been requested by Lewis and directed by the assistant mine foreman to prop the roof where decedent was at work. In response thereto he went to the working place for that purpose. Upon leaving the working place, he said, "All right, so long." There was evidence that the word "all right" meant, in mining parlance, that everything was all right. Considering the circumstances under which the language was employed, we think it was a question for the jury whether it amounted to an assurance of safety. And if an assurance of safety was given, the decedent had the right to continue his work without assuming the risk, unless the danger was so obvious that a person of ordinary prudence in his situation would have refused to do so, and this, too, was also a question for the jury. Stearns Coal and Lumber Co. v. Calhoun, 166 Ky. 607, 179 S. W. 590.

The point is also made that the court erred in authorizing a recovery if the defendant failed to use ordinary care to furnish the decedent a reasonably safe place for work. The basis for this contention is that the safe place doctrine was not applicable because decedent himself was creating the danger during the progress of the work. It must be borne in mind that under the facts of this case, the duty of propping devolved upon the company and not upon decedent. Nor is it a case where the decedent was actually engaged in removing the coal at the time of the accident and the company had no opportunity to prop. As a matter of fact the coal had been removed some time before, and in the meantime the company's timber man had been sent to do the propping and had plenty of time to do so. Under these circumstances the company was charged with the duty of using ordinary care to make decedent's working place reasonably safe and the court did not err in submitting this issue to the jury. Proctor Coal Co. v. Price's Adm'r, 172 Ky. 627, 189 S. W. 923.

It is further insisted that the verdict of the jury is contrary to instruction No. 5, and that being true a new trial should be granted whether that instruction be right or wrong. We had occasion to consider a similar ques-

tion in the recent case of Borderland Coal Co. v. Miller, 179 Ky. 769, 201 S. W. 299, where the court said: "But when there are a series of instructions, as there were here, presenting different theories of the case, it is the duty of the jury to consider all of the instructions together. They are no more bound by what is said in one than they are by what is said in another; and when so read and considered, the instruction in question did not have the peremptory effect claimed for it by counsel." A series of instructions was also given in this case.

While instruction No. 5, authorized a finding for defendant, other instructions authorized a finding for plaintiff. A verdict contrary to one instruction will not be ground for a new trial where there are other instructions authorizing the verdict, and it can not be said that the verdict is contrary to the instructions considered as a whole.

Judgment affirmed.