## Tennessee Cent. R. R. v. Cook, Admr. of Jim Reeves, Deceased.

(Decided January 23, 1912.)

### Appeal from Christian Circuit Court.

Killing of Trespasser on Railroad Track—Liability of Railroad Company for Causing Death—The law does not impose upon those

in charge of railway trains, the duty to keep a lookout for trespassers who may be upon the track, in the country, away from public crossings, and hence in order to hold the company liable for the injury, plaintiff must show not that those in charge of the train were in a position to see, but, either that they did see or were in a position where they could not help but see the perilous position of the trespasser.

JOHN B. RUSSELL, DOWNER & RUSSELL for appellant.

HESTER & ALLENSWORTH and J. B. ALLENSWORTH for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Jim Reeves, a negro farm hand, was run over and killed by one of the trains of the Tennessee Central R. R. Co. about two and a half miles south of Hopkinsville, on the evening of July 18, 1910. His administrator brought suit against the railroad and sought to recover damages for his death, alleging that it was due to the negligence of those in charge of the train. The company denied liability, and pleaded contributory neglect on the part of the deceased as the proximate cause of his injury and death. Upon a trial before a jury plaintiff was awarded $2,000. From the judgment predicated thereon this appeal is prosecuted.

The facts, as disclosed by the evidence, are as follows: This negro man had been to Hopkinsville that day and was seen drunk on the track down near the residence of W. R. Boyd about six o'clock in the evening. He either lay or fell down on the track, his body lying along side of the rail, on the outside thereof, with one or both of his feet crossing the rail. A freight train going south left Hopkinsville at 6:30. Mrs. Boyd, seeing the perilous position of the negro, notified her husband, who had just returned home, and he went out upon the track and with a handkerchief and attempted to flag this train. It is shown that the train whistled for Palmyra crossing, which is a point about 3,300 feet north of where the negro was killed. It whistled again at or near a private crossing, 1,500 feet south of Palmyra crossing. Boyd testifies that he was on the track before the train came in sight; that when it approached this private crossing and whistled, he was in plain view of it, and could see the engineer and firemen in their respective

places, apparently looking toward him; that the train did not check its speed at all until it came within 300 or 400 feet of him, when it whistled again, but did not check its speed, and he jumped out of the way; that the negro was lying upon the track about 475 or 480 feet beyond him, and that the train ran on beyond the point where the negro was lying before it stopped. Boyd is the only eye-witness to the accident who testified for plaintiff. Boyd's wife testified to hearing the train whistle three times. His daughter testified to seeing her father go out onto the track. The administrator testified as to the distances of these various points from where the accident occurred. And two practical engineers testified as to the distance within which a train of the size and weight of the one which killed deceased could be stopped, going at speeds variously estimated at from eighteen miles to thirty miles an hour. They said that a train of this character, going eighteen miles an hour upon a grade such as that was shown to be , could be stopped in the distance of a length and a half of the train. There were on this train twenty-one cars, the engine and caboose, and it was carrying 775 tons of freight. The length of such a train is between 700 and 800 feet; so that, according to the testimony introduced by plaintiff, with the proper appliances, this train could have been stopped in about 1,200 feet.

The defendant company introduced the fireman, engineer, cub fireman, brakeman and conductor as witnesses to the killing, or the movements of the train at that time. The engineer and fireman both testified that they did not see Boyd upon the track until they were within less than 150 or 200 yards of him, and that they then did all in their power to stop the train, in addition to blowing the whistle, and that they did bring the train to a stop, but not in time to avoid striking the negro. They did not see the negro until after Boyd got off the track. As to the setting of the brakes, the engineer and fireman are corroborated by the cub fireman, conductor and brakeman, all of whom testified that the brakes were hard set. No one on this train saw the negro until after they had passed the point where Boyd was standing, and he was about 500 feet from the negro. Each side introduced some evidence showing the result of

tests made upon the ground at the place where the acci-
dent occurred. The purpose of plaintiff's testimony was
to show the distance that an object could be seen upon
the track where deceased was killed; and defendant's
tests were for the purpose of showing the distance re-
quired to stop a freight train of the size and weight of
that which killed deceased when traveling at the varying
rates of speed. But for the purposes of this case we do
not deem this testimony upon either side important.

Upon this evidence it is insisted that a peremptory
instruction at the conclusion thereof should have been
given for the company. The whole case turns upon how
far from the negro on the track the train was when those
in charge of it received the danger signal given by Boyd.
If when those in charge of the train received the signal
they could have stopped it by the reasonable use of the
appliances at hand in time to have avoided the injury,
the company should be held answerable therefor. But,
if, when this signal was received, the train was so close
upon him that it could not be stopped in time to have
avoided the injury, the company is not liable; for it is
well settled under a long line of decisions of this court
that the company owed to the negro no duty at all until
those in charge of the train actually discovered his peril.
The waving of a flag or handkerchief by Boyd was notice
that there was trouble or danger ahead. If they saw
Boyd wave this handkerchief in time to have enabled
them to stop the train before it reached the negro, the
motion for a peremptory should have been overruled;
if not, it should have been sustained. Clearly, if Boyd
got upon the track at the time he says he did, and when
the train was the distance from him he says it was, and
signaled the train to stop, those in charge of it, if they
saw the signal, had time within which to have stopped
the train and avoided the injury. The engineer and
fireman both state that they were within 400 feet of him
when he came upon the track. The proof shows that the
right-of-way at that point is skirted on either side by
woodland. It was about six-forty-five in the evening.
The trees from the west side of the road cast a shadow
over it, and it is possible, that even if Boyd did come upon
the track when he said he did, and the engineer and fire-
man had both seen him, they did not see his danger sig-
nal. Until they did they had a right to presume that he
was simply crossing the track and would get out of the

way; until they saw the handkerchief wave, his presence upon the track at a point like that could not be regarded as indicating danger ahead. Boyd testified that both the engineer and fireman seemed to be looking toward him. Presumably, he meant when they were near the private crossing where they whistled. He says thay answered his signal by this whistle. The engineer says he whistled for a horse, or something else, and that he did not answer any signal, for he did not see any.

The law does not impose upon those in charge of railway trains the duty to keep a lookout for trespassers, who may be upon the track in the country, away from public crossings; and hence, in order to hold the company liable for the injury, plaintiff must show, not that those in charge of the train were in a position to see, but either that they did see. (Goodman's Admr. v. L. & N., 116 Ky., 900; C. & O. Ry. Co. v. Nipp's Admx., 100 S. W., 246, 30 Ky. Law Rep., 1131; Smith's Admr. v. I. C. R. Co., 90 S. W., 254, 28 Ky. Law Rep., 723; L., H. & St. L. R. Co. v. Jolly's Admr., 90 S. W., 977, 28 Ky. Law Rep., 989; C. & O. Ry. Co. v. Barbour's Admr., 93 S. W., 24, 29 Ky. Law Rep., 339) or were in a position where they could not help but see, the perilous position of the trespasser. Becker v. L. & N. R. Co., 110 Ky., 474; C., N. O. & T. P. Ry. Co. v. Dickerson's Admr.; 102 Ky., 560; and L. & N. R. Co. v. Bell, etc., 32 Ky. Law Rep., 1312. The engineer or fireman might see a trespasser upon the track ahead of them in the country, but they would be under no duty to him to stop the train until they saw that he was in a position of peril, i. e., that he did not know or realize that the train was approaching. Goodman's Admr. v. L. & N. R. R. Co., supra.

The pivotal question in this case is, did those in charge of the train receive the danger signal given by Boyd in time to have stopped the train before it ran over decedent. They say they did not see the danger signal given. Boyd testifies that he gave it, and that when he did so the engineer and fireman were each in their places in the cab, looking at him. With the evidence in this condition it was a question for the jury to say whether or not they in fact did receive the signal in time to have avoided the injury. The instructions fairly presented the issues involved, and while the weight of the evidence is against the verdict, we are unwilling to say that it is flagrantly against it.

Judgment affirmed.