## Williamson & Pond Creek Railroad Company v. Charles' Administrator.

(Decided January 21, 1916.)

### Appeal from Pike Circuit Court.

1. Railroads—Presence of Persons on Track—Negligence.—While the duty does not devolve upon those in charge of a train when they

discover the presence of one on the track ahead to immediately stop it, or even slacken its speed, for the reason that they have the right to assume, under ordinary conditions, that the person will leave the track before the train reaches him; yet, where the evidence shows that the presence of the person on the track was discovered 100 yards before they reached him, and that the train was going at the rate of only ten or twelve miles an hour and could have been stopped in a comparatively short distance, it was negligence to wait until the train was within a few feet of the person before taking steps to stop it.

2. Negligence.—Where human life is involved, and one is in control of the agency threatening it, it is negligence to unnecessarily delay action.

3. Pleading—Defect Cured by Verdict.—Where the parties introduced evidence upon an issue and the court instructed upon it, and it was treated throughout the trial as properly made, the verdict will be deemed to have cured any defect in the pleadings on that issue.

HOLT, DUNCAN & HOLT and J. R. JOHNSON for appellant.

ROSCOE VANOVER and J. S. CLINE for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellee's intestate, Vernon Charles, a young man nineteen years of age, was, in February, 1913, while walking along the track of appellant's railroad in Pike county, run over and killed by a mixed passenger and freight train operated by appellant, and his administrator instituted this suit for damages.

Appellant's road was a new one at the time—not in fact completed—and ran from Williamson, West Virginia, about twelve or thirteen miles to a point called McVeigh in Pike county, Kentucky. The train left Williamson early that morning and went to McVeigh, at which point there was then no turn-table or "Y," and the train had to back from there down a few miles to a point where there was a "Y" so that it might turn around for the return trip. While so backing near a mining town and the tipple of a coal company, deceased was run over and killed.

Decedent was not an employe of the railroad, and had gone that morning to some point up the road and was returning, walking on appellant's track going in the same direction the train was.

On the trial the jury returned a verdict for $3,000.00 for the plaintiff, and from a judgment on that verdict this appeal is prosecuted.

As we understand appellant's brief, the only ground relied upon for a reversal of the judgment is that it was entitled to a peremptory instruction because the evidence showed that decedent was a trespasser upon its tracks, and that it owed him no duty except the humane duty to use ordinary care to prevent an injury to him after the discovery of his peril.

There is much discussion in the briefs as to whether the decedent was a trespasser or a licensee, and whether appellant owed to him any lookout duty by reason of his presence on the track near the mining town where the presence of persons on the track should have been anticipated; but waiving this question, and the further question whether the decedent was guilty of contributory negligence by walking upon the track at the time and place of the injury, we have concluded after a careful examination of the evidence that the case was properly submitted to the jury upon the issue whether appellant's servants after the discovery of his presence upon the track used ordinary care to avoid striking him.

For it is immaterial whether he was a trespasser or a licensee, or whether he himself was guilty of contributory negligence, it was still the duty of appellant's servants after such discovery to use ordinary care to avoid injuring him.

As above stated, the train was backing down the track and was going at a rate of ten or twelve miles per hour; on the end of the front car as it backed down was a brakeman who admittedly was in control of the movement of the train through the medium of an angle cock or air valve by the use of which he could stop the train; the decedent was going in the same direction the train was going, with his back to it, and the evidence shows he was very deaf, but does not show that those in charge of the train had knowledge of this.

This brakeman in testifying how the accident happened, said:

"A. It was backing down from McVeigh, and there were some few persons on the railroad there just above the station. This man that was struck that day was on the track on the left side coming down, and the man was on the inside of the rails, and walked over this way (indicating as though to right side of track) and when the train struck him he was on the inside of the rail, and it looked as though he was going to step off. I thought

he was going to step off. Just about thirty or forty feet before I reached him I put on the air in emergency, and did all I could do to stop. Q. How far before you struck him did you see him on the track? A. Probably about one hundred yards.''

Another witness, who saw the accident, testifies that at the time the brakeman who was on the end of the car jumped to the end of the train and grabbed at something, that it was only twelve or fifteen feet from the decedent.

From this evidence it will be seen that although the brakeman, who had control of the movement of the train, had seen the decedent on the track when he was one hundred yards away from him, and that the train was only going at the rate of ten or twelve miles an hour and could be stopped by the use of the angle cock in a comparatively short distance, as was afterwards shown, the question is, should not the case have been submitted to the jury and the question been left to it, as was done, whether after the discovery of the presence of Charles on the track ordinary care was used to avoid injuring him?

It is quite true that this court has held in a number of cases that where the presence of one is discovered on a track ahead of a train that it does not devolve upon those in charge of the train to immediately stop it or even slacken its speed, the trainmen having the right to assume, under ordinary conditions, that the person would leave the track before the train reached him; but it has also held that it is a question for the jury to determine whether the trainmen exercised ordinary care to avoid the injury after discovering his presence on the track. Becker v. L. & N., 22 K. L. R., 1893; L. & N. v. Bell, 32 K. L. R., 1312.

Under the evidence in this case the jury might have thought that the brakeman after the discovery of Charles' presence on the track waited too long to apply the brakes by the use of the angle cock, and might well have thought that the exercise of reasonable judgment and care for the safety of the decedent required earlier action upon his part which would have averted the collision. Clearly they were authorized to find from this evidence that the exercise of a sound judgment required action by the brakeman before the train was immediately upon or within a few feet of the decedent. Where human life is involved, and one is in control of the agency threatening

it, it certainly is negligence in him to take any unnecessary chances by delaying action.

But it is contended for appellant that the plaintiff did not allege in his petition any negligence upon the part of appellant or its employes after the discovery of Charles' presence upon the track; the plaintiff, however, did allege in his petition that the defendant and its agents and servants could have by the use of ordinary care discovered the peril of the deceased in time to have averted the danger, which was denied in the answer.

But notwithstanding this failure in the petition, the defendant in its answer, after controverting in the first paragraph the material allegations of the petition, in a separate paragraph affirmatively pleaded that the decedent was a trespasser on its tracks, and that as soon as its agents and servants discovered his peril they made every effort to avoid injuring him, and that affirmative allegation was controverted on the record.

Whether the issue was properly made in the pleadings is not now material; the parties introduced evidence upon it, the court instructed upon it, and it was treated throughout the trial as properly made, and under such circumstances the verdict will be deemed to have cured any such defect.

As it appears from appellant's brief that it only desires a reversal upon the ground that it was entitled to a peremptory instruction for the several reasons given therein, and as we have concluded that the case was properly submitted to the jury upon the one ground above stated, we have deemed it unnecessary to consider the other grounds presented.

Judgment affirmed.