## Johnson, Administratrix v. Sandy Valley & Elkhorn Railway Company.

(Decided October 4, 1918.)

### Appeal from Pike Circuit Court.

1.  Railroads—Operation—Injury to Person on Track—Trespasser—Duty.—A railroad company owes to a trespasser on its bridge no duty except to use ordinary care to avoid injuring him after his peril is discovered.

2. Railroads—Operation—Injury to Person on Track—Trespasser—Discovery of Peril—Evidence.—In an action for the death of a trespasser on a railroad bridge it is not sufficient to show that those in charge of the train might have seen him, but it must appear that they actually saw him, and this may be shown either by direct evidence or by proof of facts showing that the circumstances and conditions were such that they could not have failed to see him.

3. Railroads—Operation—Injury to Person on Track—Trespasser—Discovery of Peril—Evidence—Sufficiency.—In an action for the death of a trespasser, evidence that those in charge of the train discovered his peril in time to have avoided injuring him by the exercise of ordinary care, examined and held insufficient to take the case to the jury.

STRATTON & STEPHENSON for appellant.

HAGER & STEWART and AUXIER, HARMAN & FRANCIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Mary J. Johnson as administratrix of her husband, W. B. Johnson, brought this suit against Sandy Valley & Elkhorn Railway Company to recover damages for his death. At the conclusion of the evidence, the trial court directed the jury to return a verdict in favor of the defendant. Judgment was entered accordingly and plaintiff appeals.

The defendant operates a line of railroad extending from Shelby to Jenkins, in Letcher county. The accident occurred on a bridge about 335 feet from Elswick station. The side girders of the bridge consist of solid metal sheets which extend four feet and nine inches above the cross ties. The bridge is a connecting link between two ten degree reverse curves and an engineer on a track approaching from Elswick station has only a side view of the bridge until he reaches a point near the bridge. The accident occurred on the morning of February 26, 1914. It was a cold day and the ground and tracks were covered by sleet and snow. W. B. Johnson was *en route* to Elswick station to take a train for Pikeville. Instead of traveling the public road adjoining the railroad, he proceeded along the railroad tracks. Before reaching the bridge he was joined by Garfield Johnson. After going a short distance, they heard a train whistle. They thought that this was the train

they were to board at the station and increased their speed. When they reached the bridge they hesitated, but decided to walk across the bridge. When they had gone about two-thirds of the distance across the bridge, a train, consisting of an engine and two coaches, came towards them. As soon as the train appeared Garfield Johnson decided to get out of the way by stepping on a floor beam which extended several feet from the end of the ties and tried to get W. B. Johnson to do the same thing. W. B. Johnson said that he would not pass a train on the bridge, and immediately started towards the end of the bridge and the approaching train. When the train approached it was emitting considerable steam and Garfield Johnson stepped down on a metal plate attached to the bottom of the girder and stooped so that the steam could not burn him. This position he kept until the train had passed. He saw no more of W. B. Johnson after the latter started toward the end of the bridge. A few minutes later W. B. Johnson was found dead under the bridge with some severe wounds on his head and body. For plaintiff, several persons who had congregated at Elswick station testified that the bridge and a man on the bridge could be seen from a point below the station, and that the engineer was looking in the direction of the bridge as the train passed the station. Two or three witnesses also stated that the engineer turned his eyes in the direction of the crowd as he passed the station. The engineer and fireman both testified that they did not see the deceased at all. There was further evidence that the speed of the train was about twenty-five miles an hour and that the train could have been stopped within a distance of from three to four hundred feet.

It is conceded that the deceased was a trespasser and that the company owed him no duty except to use ordinary care to avoid injuring him after his peril was discovered, but insisted that the evidence on this question was sufficient to take the case to the jury. In a case like this, it is not sufficient to show that those in charge of the train might have seen the trespasser, but it must appear that they actually saw him. That they saw him may be established either by direct evidence or proof of facts showing that the circumstances and conditions were such that those in charge of the train could not have failed to see him. Tennessee Cent. R.

Co. v. Cook, 146 Ky. 372, 142 S. W. 683. Thus it has been held that evidence that the injured party was on the track; that the track was straight; that the view for a long distance was unobstructed, and that the engineer was looking towards the trespasser was sufficient to take the case to the jury. Becker v. L. & N. R. Co., 110 Ky. 474, 61 S. W. 997; C. N. O. & T. P. R. Co. v. Dickerson's Admr., 102 Ky. 560, 44 S. W. 99; L. & N. R. Co. v. Bell, 108 S. W. 335. The evidence in this case, however, does not meet with these requirements. The track was curved and not straight. The view of a person on the bridge was obstructed by the side of the bridge. Even if standing erect, only his head and the upper portion of his shoulders could be seen. The position of the deceased as the train approached was not shown. For aught that appears, he may have been running with his head and shoulders bent forward, or he may have slipped on the snow and have fallen on the cross-ties behind the solid girders, thus rendering it impossible that the engineer, though looking in the general direction of the bridge, actually saw him. In other words, the circumstances and conditions were as consistent with the theory that the engineer did not see the deceased as with the theory that he did see him, and were not sufficient to show that the engineer could not have failed to see him. We, therefore, conclude that the evidence that the engineer discovered the peril of the deceased in time to avoid injuring him by the exercise of ordinary care was insufficient to take the case to the jury, and that the directed verdict was proper. Willis' Admx. v. L. & N. R. Co., 164 Ky. 124, 175 S. W. 18.

Judgment affirmed.