## Louisville & Nashville Railroad Company v. Dooley's Administrator.

(Decided April 29, 1927.)

### Appeal from Rockcastle Circuit Court.

1. Railroads.—Railroad company owed no duty to one trespassing on its right of way by attempting to cross the track at distance from highway until it discovered his peril.

2. Railroads.—When engine men discover peril of trespasser attempting to cross track, they must use ordinary care with the means at hand consistent with safety of the train and persons on it to avoid injuring him.

3. Railroads.—Railroads would not be presumed negligent, and court should have instructed verdict for defendant railroad in admin-istrator's action for death, where deceased, when last seen, was a trespasser standing in place of safety, and evidence failed to show when he entered track, or that he was seen in peril by engine men.

4. Railroads.—Men operating railroad engine and under duty to ex-ercise ordinary care are not required to comprehend situation im-mediately and instantly to perform every duty imposed by a sudden emergency; such presence of mind not being possessed by ordinary men.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, C. C. WILLIAMS and J. W. BROWN for appellant.

S. D. LEWIS and L. L. WALKER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellant, Louisville & Nashville Railroad Com-pany, which we shall refer to as the railroad company, seeks by this appeal to reverse a judgment for $8,000 re-covered against it by the administrator of Clay Dooley. Clay Dooley was killed by a train belonging to the rail-road company, about a half mile north of Conway in Rockcastle county, in the early morning of April 8, 1925.

At the conclusion of the evidence for the plaintiff, the railroad company moved the court to instruct the jury to return a verdict for it, and, when that motion was overruled, it declined to introduce any evidence. The testimony is meager, not only as to the happening of the accident, but also as to the topographical conditions at that point. Dooley lived on the east side of the railroad, and just about opposite Dooley's house was the house of his father-in-law, Hiram Thacker, on the west side of the railroad. The railroad company has three tracks at that point. The eastern track, or the one next to Dooley's house, was a storage track. The middle track was the main line track of the railroad, while the western track was a passing track. Dooley kept his teams in Mr. Thacker's barn, and the inference is that he had started to the barn to attend to his teams. A short distance south of Dooley's house was a public road, known as the Fairview public road, and, from the plats and evidence in the case, it is apparent that Dooley would have had but a short distance further to walk if he had gone to the public road and had crossed the railroad track at that

point, and then gone to Thacker's barn; but instead of doing that, he apparently started directly across the railroad from his house to Thacker's barn. At that time a freight train was going north on the west or passing track. Dooley was struck and killed by a train going south on the center or main track.

None of the witnesses who have testified saw the accident. One witness, Lee Smith, who was near the Taylor public road crossing about 700 feet north of the point of the accident, said that just before the accident he looked back and saw Dooley walking toward the track. When asked how close Dooley was to the east side of the track, he said: "He was right up; it might have been 6 or 8 feet of the—." The witness did not complete that sentence, but, continuing his evidence, he said: "The man stopped and turned around, and looked like he was looking at the freight train that was going north." He said there was a wire fence between him and Dooley, and that he, on account of that, could not see well, and he could not tell whether he was on the track or not, but Dooley appeared to be just approaching the east track. He said that at the time he saw a man on the engine of the southbound train with his head out of the window, looking down the track in the direction of Dooley, and this is all the evidence shows about the accident. According to this witness, at the time he saw this man on the engine looking in Dooley's direction, Dooley had then stopped near the east track, and was looking at the freight train going north on the west track. Evidently Dooley afterwards crossed the east track and got onto the center or main track, in front of the south-bound train, by which he was struck and killed; but just when Dooley did this, there is nothing in the evidence to show. At the time Smith saw him, Dooley was in a place of safety, and just when Dooley crossed the eastern track and got onto the middle track and into a place of danger does not appear in the evidence.

Clearly, Dooley was a trespasser, and the railroad company owed him no duty until it discovered his peril. After the agents of the railroad company on this engine discovered the peril of Dooley, if they did, it was their duty to use ordinary care with the means they had at hand consistent with the safety of the train and the persons on it to avoid injuring him. If they failed to do so, then they were negligent, for which the railroad company

is responsible; but negligence is never presumed, and there was no proof here that the man on this engine saw Dooley in a place of peril at all, much less saw him there in time to have avoided injuring him. The witness Smith does not say that, at the time he saw Dooley stopped and looking at the train, the man on the engine could then have seen Dooley at all, and there can be no doubt about where Dooley was at that time, because upon his redirect examination, in answer to a question propounded by the attorney for the plaintiff, in an effort to have this witness locate Dooley exactly, with the map before him, the witness was asked where it was he saw Dooley standing with his back to the north. The witness located Dooley as opposite his home. Whereupon the attorney for the plaintiff asked him: "On the east track?" The witness answered: "Yes, sir." Thus the evidence closes with Dooley in a place of safety, without any evidence that Dooley could then be seen by the man on the engine, and there is nothing to show when Dooley crossed this east track and got onto the middle track where he was killed. The railroad company owed Dooley no duty until it discovered his peril. He was in no danger until he got onto the middle track, and there is nothing in the evidance to show when that happened.

The plaintiff is relying on the case of L. & N. R. Co. v. Nickell, 208 Ky. 60, 270 S. W. 487. In that case, just as in this one, it was claimed that the fireman was looking ahead, but that case is distinguished from this one by the fact that the plaintiffs in the Nickell case were in a position of peril at the time that the fireman was looking ahead and was supposed to have seen them; whereas, in this case, the last we know of Dooley's position previous to the accident and when the fireman was looking ahead, Dooley was in a place of safety, and for the same reason the case of Becker v. L. & N. R. Co., 110 Ky. 474, 61 S. W. 997, 22 Ky. Law Rep. 1893, 53 L. R. A. 267, 96 Am. St. Rep. 459, does not apply. The same is true of Tenn. Cen. Ry. Co. v. Cook, 146 Ky. 372, 142 S W. 683, Willis' Adm'x v. L. & N. R. Co., 164 Ky. 124, 175 S. W. 18, and L. & N. R. Co. v. Bell, 108 S. W. 335, 32 Ky. Law Rep. 1312. It is argued for Dooley's administrator that there can be no doubt the man on the engine saw Dooley, because the train stopped and there was no other reason for its stopping. Evidently, at some time some one on the engine or train knew it had struck Dooley, and the train was

stopped on that account; but this fact does not elucidate the crucial question in the case, which is as to whether the men on the engine actually discovered Dooley in a position of peril in time, by the exercise of ordinary care, to have avoided injuring him. It is suggested that, if they had blown the whistle, Dooley would have heard it and gotten out of danger. There is no evidence, however, that Dooley's peril was discovered in time for the whistle to be blown before he was struck, and, besides, the men on the engine were only required to use ordinary care. They were not required to exercise the utmost possible care to immediately comprehend the whole situation and to lose not a second in the performance of every duty imposed upon them by a sudden emergency.

In the case of Ky. Traction & Terminal Co. v. Roschi's Adm'r, 186 Ky. 371, 216 S. W. 579, we said of the conduct of the motorman under similar circumstances:

"Such presence of mind and efficiency are not possessed by ordinary men nor available to the defendant, and hence plaintiff was not entitled to protection in that extreme degree, and the trial court erred in refusing to direct a verdict for the defendant."

What was said in the Roschi case was quoted and approved in Ky. Traction & Terminal Co. v. Brackett, 210 Ky. 756, 276 S. W. 828.

Therefore the court should have instructed the jury to find for the defendant, and, because it failed to do so, the judgment is reversed.