## Louisville & Nashville Railroad Company v. Mann's Administrator.

(Decided January 18, 1929.)

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN,. JESSE MORGAN and C. S. LANDRUM for appellant.

H. C. JOHNSON and W. A. STANFILL for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The Louisville & Nashville Railroad Company, which we shall call the defendant, seeks to reverse a judgment for $8,000 recovered against it for the death of James

Mann, a 13-year-old boy. Several grounds for reversal are relied on; but, in view of the conclusion to which we have come, we shall not consider these, as the defendant was entitled to a directed verdict.

Assuming, but not deciding, that the evidence for the administrator was all properly admitted, this is what it shows: On the morning of May 21, 1926, the decedent was given money by his mother to make a visit to his uncle, Boyd Baker, who lived at Krypton, Ky. He got on one of the defendant's south-bound trains, and said he went to sleep, and was carried past Krypton to Hazard. He then started to walk back, and on the way he became tired. He sat down on the track with his elbows on his knees, his head bent over, his face in his hands, and went to sleep. While asleep, he was struck and killed by one of defendant's north-bound freight trains. The place where he was killed was known as Hoyt's curve. The railroad at that point is constructed along the west side of the Kentucky river. There are three tracks at that point. The east or right-hand track is used for north-bound trains, the west or left-hand track is used for south-bound trains, and between these two there is a third track called a "passing track," but which was used at that time as a storage track and was filled with empty cars. There is some dispute in the evidence about the view afforded the agents of the defendant in charge of this train of the point where the boy was killed, but, accepting the administrator's contention as to that, then the boy could have been seen a distance of 924 feet before he was struck. The alarm was sounded and the brakes applied when this train was 132 feet from where he was struck, and the train came to a stop about 33 feet after striking him, thus this train was stopped in a space of 165 feet, and according to the contention of the administrator, the engineer said to some neighbors, who had come there shortly after the boy was struck, "I saw him but I thought I could signal him off." No evidence was introduced on behalf of the defendant. There was no proof that the train could have been stopped any sooner than it was. In view of the fact that this was a heavy train consisting of 60 cars of coal, it must be admitted that it was promptly stopped after the alarm was given. There is no evidence that the agents of the defendant in charge of this train saw this boy at all, except the inference that can be drawn from the fact that this

alarm was given and this train was stopped shortly after the boy was struck, save the statement of the engineer referred to above.

It is admitted that the deceased was a trespasser, therefore the burden rests upon his administrator to show that the agents of the defendant in charge of this train discovered, not only the presence, but also the peril, of the deceased in time by exercise of ordinary care to have avoided injury to him by use of the means they had at hand. The administrator argues that, because these agents of the defendant could have seen the deceased when they were 924 feet from him, therefore it may be inferred they did see him, and, if they did, that they could have seen he was asleep, and should have stopped this train in time to have avoided injuring him. The trouble with the contention of the administrator is that it fails to note the distinction between an inference and a supposition. An "inference" is a conclusion drawn by reason from facts established by proof; "a deduction or conclusion from facts or propositions known to be true." Parsons v. Baltimore B. & L. Ass'n, 44 W. Va. 335, 29 S. E. 999, 67 Am. St. Rep. 769. An "inference" is the conclusion drawn on reason from premises established by proof. Wright v. Conway, 34 Wyo. 1, 242 P. 1107. A supposition is a conjecture based on the possibility that a thing could have happened. It is an idea or a notion founded on the probability that a thing may have occurred, but without proof that it did occur. Conceding but not deciding that it was possible for the agents of the defendant to have seen this boy 924 feet before they struck him, there is no proof that they did see him at that distance or at any other point previous to the sounding of the alarm and the application of the brakes, which was 132 feet before the train hit him, or that, if he was seen sooner, his peril was discovered sooner.

The administrator in support of this judgment has cited a vast number of cases, and to discuss them all would be needless; but we shall discuss some of them which, he insists, are directly in point.

The judgment in L. & N. R. Co. v. Clemmons, 218 Ky. 808, 292 S. W. 506, was affirmed because the engineer was keeping a lookout, saw the peril of the trespasser when 300 feet from him, shut off the steam, and applied the brakes, but omitted to sound any alarm of any kind.

The case of L. & N. R. Co. v. Spicer, 187 Ky. 601, 219 S. W. 1047, was affirmed because the engineer was keeping a lookout and saw Spicer lying between the rails 600 feet or more away and blew an alarm, but did not apply the brakes until 150 feet before he was struck.

In explanation of Starrett v. C. & O. R. Co., 110 S. W. 282, 33 Ky. Law Rep. 309, we will say that we have examined the record, and it shows the engineer was keeping a lookout and blew the distress whistle when 900 feet away, but made no effort to stop the train until within three or four car lengths of him.

In Becker v. L. & N. R. Co., 110 Ky. 474, 61 S. W. 997, 22 Ky. Law Rep. 1893, 53 L. R. A. 267, 96 Am. St. Rep. 459, the engineer had a plain view of the bridge and of the trespasser's peril for 960 feet, that he was looking, and we said it could from this be inferred the peril of the trespasser was discovered in ample time for the speed of the train to have been so checked as to have enabled the trespasser to have escaped.

Vanarsdell's Adm'r v. L. & N. R. Co., 65 S. W. 858, 23 Ky. Law Rep. 1666, and L. & N. R. Co. v. Vanarsdell, 77 S. W. 1103, 25 Ky. Law Rep. 1432, grew out of the same accident as the Becker case.

In Spiegle v. C. N. O. & T. P. R. Co., 170 Ky. 285, 185 S. W. 1138, the engineer had a clear view of the trespasser's peril for 1,200 feet, and was looking, but failed to do anything until within four or five car lengths of the trespassing child.

In L. & N. R. Co. v. Bell (Ky.) 108 S. W. 335, 32 Ky. Law Rep. 1312, the engineer had a clear view for 975 feet, he was looking, from which it was held that it might be inferred he saw the trespasser's peril in time to have avoided the accident.

In Tennessee C. R. R. v. Cook, 146 Ky. 372, 142 S. W. 683, there was proof that the engineer was looking, that Boyd was signaling them to stop, and they had a clear view of him for 1,800 feet, but they did not stop, but ran past him, and killed the trespasser 475 feet beyond Boyd.

In Williamson & P. C. R. Co. v. Charles' Adm'r, 168 Ky. 41, 181 S. W. 614, a train was backing up, its movement being controlled by a brakeman on the rear car of the train, which was by reason of the backing movement then in front of the train. This brakeman was looking, he saw Charles when he was 300 feet from him, but made

no effort to stop the train until he was within 30 or 40 feet of him, which was too late.

It will be seen from all these cases that, either the evidence showed those in charge of the train saw the peril of the trespasser in time to have avoided injuring him, or that they had a clear view and were keeping a lookout, from which it could be reasonably inferred that they did see him. Here the engineer had, according to the administrator, a clear view of the deceased for 924 feet; but there is no proof the engineer was looking. This boy was a trespasser for whom the engineer did not have to look, and to sustain this judgment the administrator would have to show the engineer was looking. Of course, it was possible, according to the administrator's contention, if the engineer was looking, that he could have seen the deceased at that distance, and he supposes the engineer did look, but he has no proof that he did. Supposition has no legitimate support or habitation in judicial administration. Johnson v. State, 102 Ala. 1, 16 So. 99. An inference cannot be based upon a mere possibility or probability, it can only be based upon a fact proved or something known to be true. Seavey v. Laughlin, 98 Me. 517, 57 A. 796; Wright v. Conway, supra. "Inference, in legal parlance, as respects evidence, is a very different matter from supposition. The former is a deduction from proven facts . . . ; while the latter requires no such premise for its justification. . . . Courts and juries, in dealing with the inquiry whether a party has discharged his burden of proof, can not pronounce upon mere supposition that the burden has been met." Miller-Brent Lumber Co. v. Douglas, 167 Ala. 286, 52 So. 414.

Because the agents of the defendant could have seen the decedent when they were 924 feet away from him, it may be supposed that they did see him, but it cannot be inferred because there are no proven facts on which to base the inference. However, although there is no proof that the agents of the defendant ever saw the decedent sooner, yet when this train was 132 feet from him, the proof shows that the whistle began to blow and the brakes were applied, and that the train stopped in about 165 feet, thus establishing that this train could be stopped in 165 feet and establishing by inference that the men in charge of this train saw the decedent when they were 132 feet away from him; but there is absolutely nothing from which it can be inferred that the train could have been

404

stopped any sooner, or that the men in charge of it saw the deceased before the sounding of the alarm and the application of the brakes.

There is an intimation in the proof that the engineer blew the whistle before applying the brakes, and the administrator contends he should have applied the brakes and then blown the whistle; but the defendant, in the selection of its engineers, is unable to secure men who will always immediately comprehend the entire situation, who will lose not a second and err in no particular in discharging every duty imposed by a sudden emergency. Such presence of mind and efficiency are not possessed by ordinary men, and hence the defendant cannot be held liable because in such an emergency, with only a fraction of a second in which to act, and with several things to do in an effort to avoid injuring a trespasser, its engineer, in his haste, does one of these things before the other. See Kentucky Traction & Terminal Co. v. Brackett, 210 Ky. 756, 276 S. W. 828.

We have concluded the defendant was entitled to a peremptory instruction. We are passing on no other question, and if, upon the second trial, the evidence is substantially the same as upon this one, the court will direct the jury to find for the defendant.

The judgment is reversed.