## Chesapeake & Ohio Railway Company v. McDonald.

(Decided May 1, 1931.)

HUNT & BUSH, B. L. KESSINGER, W. B. WHITE and LEWIS APPERSON for appellant.

REID PREWITT, CHAS. D. GRUBBS and ROBERT H. WINN for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

On September 4, 1927, J. C. McDonald was struck by
a freight train on the Chesapeake & Ohio Railway and
killed. This action was brought by his administratrix to
recover for his death, and, judgment having been ren-
dered in the circuit court in her favor for $3,000, the rail-
way company appeals.

The first question made on the appeal is that the
court should have instructed the jury peremptorily to
find for the defendant. The facts shown by the proof are
these: J. C. McDonald lived at Mt. Sterling, Ky. On
September 3 he bought a ticket at Mt. Sterling and went
up on the railway to Salt Lick to see some relatives, with
whom he spent the day. Salt Lick is 20 miles east of Mt.
Sterling. That afternoon he took the train to return
home. He was a painter by trade, was in good general
health, 68 or 70 years of age, and earning about $3 a day,
but he was hard of hearing. He could not hear what one
said to him unless close to him or the voice was raised.
The relative with whom he had spent the day came down
to the train with him; bought the ticket for him. McDon-
ald went up the steps of the coach, and, while he was
doing so, the relative touched his elbow, as one would in
assisting anybody, and when he reached the platform he
said to his relative, "When are you all going to pay us a
visit?" The relative replied, "In a day or two," and
then turned to the conductor, who was standing by, and
said, "Mt. Sterling please." The conductor nodded his
head. When the train reached Mt. Sterling, evidently
McDonald did not hear the station called; he did not get
off. He called the porter after the train started. The
porter reported this to the conductor. The conductor
pulled the bell cord, but the train did not stop. This was
about a mile from the station. There is another station,
Klondike, about 6 miles west of Mt. Sterling. The plain-
tiff proved that the train stopped there, but the railway
witnesses say it did not stop there, and that the train ran
on to Winchester and there McDonald got off the train.
The defendant offered to prove by the porter that when
McDonald got off the train at Winchester the conductor
gave him a hat check, just a little piece of paper, with
some writing on it, and told McDonald to give that check
to the conductor on the next train for his return to Mt.

Sterling. The conductor was dead when the trial occurred, and the court did not permit this evidence to be given. The plaintiff introduced proof by a witness who got off the train at Winchester that she did not see McDonald there. Winchester is about fifteen miles west of Mt. Sterling. There is no proof of McDonald's whereabouts from the time he left the train, which was about 5 o'clock on September 3, until a little after sunrise the next morning. About this time a lady and her daughter, who lived near the railway about three-fourths of a mile west of Klondike and about nine miles east of Winchester, saw a man walking along the railroad going east, and soon after this heard the freight train stop near where they had seen him. The engineer of the freight train was dead when the trial occurred. The plaintiff offered in evidence his testimony given at the coroner's inquest a few days after the occurrence. The engineer at that inquest testified that he was at his post at the engine on the right-hand side, running west, about twenty-five miles an hour, and when he got within about 150 feet of McDonald he saw him standing on the side of the railway, with his face toward the train and his body turned to the north; that he at once blew his whistle and put on the brakes; that McDonald stepped back, and then, just as the train reached him, stepped up again on the cross-ties and was struck by the train and killed. They stopped the train and took the body on the train to Winchester. The court refused to allow the testimony of the engineer to be read, as neither the railway company nor the administratrix was a party to that proceeding, although the railway company was represented there by its attorney. The plaintiff put on as her witness the fireman of the engine, who said that he was in the fireman's seat on the left-hand side of the engine and looking out in front; the train was running about twenty-five miles an hour. It was stopped in about 400 feet. The occurrence took place about 5 o'clock in the morning when the sun was up. He did not see McDonald at all. He did not leave the engine when the train stopped, and did not know that a man had been hit. The engineer blew the whistle and applied the brakes—grabbed them both about the same time, one with one hand and the other with the other hand.

Appellee insists that McDonald was not a trespasser upon the railroad track, for the reason that he was a

passenger on the train the evening before, having been carried past his station when he was deaf and this was known to the conductor, and he had been put off at Klondike. But if he was put off at Klondike, six miles west of Mt. Sterling, and if (but this is not decided) he had the right to walk to his home along the railroad for this reason, this gave him no right to walk along the railroad west of Klondike, unless he was pursuing the nearest route to the highway where he could leave the railroad. When he was struck he was three-fourths of a mile west of Klondike going east, and it was about twelve hours after he left the train. The fact that he had been carried past his station certainly gave him no right to be on the railroad away from his home on the next day. If he was put off at Winchester, United States highway 60 runs directly from Winchester to Mt. Sterling, and he could have walked home on it. McDonald, therefore, must clearly be regarded as a trespasser upon the track of the railroad the next morning.

The point where he was hit was on a curve in a cut. There was testimony tending to show that the fireman was looking ahead and that his view was unobstructed.

The rule is well settled in this class of cases that the railroad company owes the trespasser no duty to keep a lookout for him, and that it is not responsible for the injury to him, unless after his peril is actually discovered proper care is not used for his protection. Cummings v. I. C. R. Co., 110 S. W. 809, 33 Ky. Law Rep. 584; Burton v. Cincinnati, etc., R. Co. (Ky.) 113 S. W. 442; Cincinnati, etc., R. Co. v. Earls' Adm'r (Ky.) 113 S. W. 854; Louisville & N. R. R. Co. v. Dooley, 220 Ky. 67, 294 S. W. 810; Wimsatt v. L. & N. R. Co., 235 Ky. 405, 31 S. W. (2d) 729, and cases cited. It has been held under this rule that, where it is shown that the trespasser was on the track and in plain view for a considerable distance, and it was also shown that persons on the train were in their positions looking ahead as the train approached and there was nothing to prevent their seeing the trespasser, and they took no steps for his protection, the jury might infer from the fact that his peril was in fact discovered and the proper care was not used for his protection. Tennessee, etc., R. R. v. Cook, 146 Ky. 372, 142 S. W. 683; Louisville & N. R. R. Co. v. Mann, 227 Ky. 399, 13 S. W. (2d) 257. The case was conse-

quently one for the jury's determination under proper instructions.

It is insisted that the court erred in refusing to allow the engineer's testimony, given before the coroner, to be read before the jury. In Kelly v. Connell, 3 Dana 532, evidence given before arbitrators was held admissible (where the witness was dead) in a subsequent suit between the same parties. So in O'Brian v. Com., 6 Bush. 563, the evidence of a witness on the examining trial was held competent on the final trial of the case where the witness was dead. In North River Insurance Co. v. Walker, 161 Ky. 368, 170 S. W. 983, the testimony of a dead witness, upon the examining trial of the assured, was held competent in his suit against the insurance company. But none of these cases involved the competency of the testimony of a witness on a coroner's inquest. A coroner is not a judicial officer. The proceeding is inquisitorial. The examination and cross-examination of witnesses are matters of grace and not of right. The plaintiff was not a pary to that proceeding. In Jones on Evidence, sec. 339, the rule is thus stated:

"Nor is the testimony of a witness given at a coroner's inquest admissible under this exception in a subsequent action, as the inquest is not a judicial proceeding between the same parties." To the same Effect, see Capital Traction Co. v. King, 44 App. D. C. 315; Cook v. N. Y. C. R. Co., 5 Lans. (N. Y.) 404; Germania Life Ins. Co. v. Lewin, 24 Colo. 43, 51 P. 488, 65 Am. St. Rep. 215; Edgley v. Appleyard, 110 Me. 337, 86 A. 244, Ann. Cas. 1914D, 474.

What took place between the conductor and McDonald when McDonald was leaving the train or about to leave it, was a part of the res gestae, and the court should have allowed the witness to testify to this. The court gave the jury this instruction:

"If the jury believe from the evidence that defendant's fireman on defendant's locomotive which killed McDonald was keeping a lookout along the track at said time and place, and if the jury further believe that the view along said track at said place was clear for a sufficient distance for one so looking to have seen McDonald in time to have avoided injuring him, and if the jury believe that

those in charge of said engine failed to use ordinary care to apprise decedent of the approach of said train and to avoid striking him, and that as a result thereof he was struck and killed at the time and place complained of, they will find for the plaintiff, as set out in the fourth instruction.''

In lieu of this instruction, on another trial, the court should instruct the jury, in substance, that, if they believe from the evidence that the defendant's servants in charge of the engine, or any of them, saw McDonald in time to avoid the injury to him by the exercise of ordinary care, and thereafter failed to exercise such care, and as the proximate result thereof McDonald was injured, they should find for the plaintiff, and by another instruction the court should in substance, tell the jury that those operating the engine were under no duty to keep a lookout for McDonald, and that, unless they or one of them in fact saw him and after he perceived his danger could by ordinary care have averted the danger to him, they should find for the defendant.

Judgment reversed, and cause remanded for a new trial.