## Proctor Coal Company v. Price's Administrator.

(Decided December 7, 1916.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Safe Place to Work—Mines—Drillers.— Where it is no part of the duty of a coal mine driller engaged in undercutting coal to inspect or prop the roof, but this duty devolves upon the loaders employed by the master to shoot down and remove the coal, the master is under the duty to exercise ordinary care to furnish the driller a reasonably safe place to work.

2. Master and Servant—Safe Place to Work—Injuries to Miner— Assumption of Risk.—A servant does not assume the risk of the master's failure to furnish him a reasonably safe place to work, unless the dangerous condition is known to him or is so obvious that a person of ordinary prudence in his situation would have observed and appreciated it.

3. Master and Servant—Mines—Negligence—Assumption of Risk— Question for Jury.—In an action for damages for the death of a coal mine driller, alleged to have been caused by the failure of the master to furnish him a reasonably safe place to work, evidence examined and held that the negligence of the defendant and the assumption of risk by decedent were questions for the jury.

4. Master and Servant—Mines—Death—Contributory Negligence— Question for Jury.—In an action for damages for the death of a coal mine driller, evidence considered, and the contributory negligence of the decedent held to be a question for the jury.

5. Continuance—Surprise—Prejudicial Error.—Where, in an action for the death of a coal mine driller occurring in the State of Tennessee, the original petition pleads the law of Tennessee, it is not prejudicial error to permit an amended petition to be filed, pleading more specifically the law of that state respecting the measure of damages and to receive evidence on the question, or to refuse to continue the case on the ground of surprise, where there is no substantial difference between the Kentucky and Tennessee measure of damages and the jury is instructed in accordance with the Kentucky measure of damages and the verdict is for only $1,200.00, and it appears that the decedent had a life expectancy of 31.93 years and a probable earning capacity of about $18,000.00.

6. Appeal and Error—Death—Expectancy of Life—Life Tables—Instructions.—The refusal to give an instruction limiting the effect of the life tables introduced by plaintiff to show the decedent's expectancy is not prejudicial error, where the verdict is for only $1,200.00 and the decedent is shown to have had an expectancy of 31.93 years and a probable earning capacity of about $18,000.00.

TYE, SILER & GATLIFF for appellant.

ROSE & POPE for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

J. J. Price, an employe of the Proctor Coal Company, was killed by falling slate. His administrator brought this suit to recover damages for his death. From a verdict and judgment in favor of plaintiff for $1,200.00 the coal company appeals.

The company's mine is located on the Kentucky-Tennessee line and the room in which the accident occurred is in Tennessee. Price was engaged in operating a machine used for undercutting the coal and had a helper by the name of Seal. Leading into the room where he was at work were two roadways, one known as the "straight" roadway along the right rib, and the other known as the "crooked" roadway along the left rib. The machine was operated over the "straight" roadway, while the coal was removed over the "crooked" roadway. The evidence clearly shows that it was no part of the duty of the machine man to inspect or prop the roof, though there was some evidence to the effect that if he knew of or discovered any loose or dangerous slate it was his duty to remove same or report that fact to the mine foreman. After the machine man made the necessary cut, it was the duty of the loaders to shoot down and remove the coal and then prop the roof. Plaintiff's evidence tends to show that, while the roof was properly propped on the side next to the "straight" roadway, it was not securely propped on the side next to the "crooked" roadway, and that the piece of slate which struck and killed the decedent fell from the roof at a point near the "crooked" roadway. It was also shown that there was nothing in the appearance of the roof to indicate that the slate would fall. The slate did not fall from above the coal which was being cut at the time of the accident, but fell from above the coal which decedent had cut two days before. One of plaintiff's witnesses says that he told the mine foreman that the top was bad. He also says that the decedent knew that the top was bad. Defendant's mining engineer and foreman were in the room the day before the accident. They say that they considered the roof in safe condition. They also say that there were five props extending from the "straight" roadway to the "crooked" roadway, and that two of these props were under the slate which fell and were sufficient to make the roof reasonably safe. Defendant's evidence

also tends to show that after the accident two props were found close to the slate, also a hammer that had been used by the decedent.

1. It is suggested that a peremptory should have gone, because the facts of this case bring it within the rule laid down in the case of Smith's Admr. v. North Jellico Coal Company, 131 Ky. 196, 114 S. W. 785. In that case Smith operated a cutting machine. The evidence showed that while it was the duty of the loaders to pull down loose slate and carry it out, it was the duty of Smith to judge of the safety of his own surroundings. It was also shown to be his duty when he needed props to call for them. It was further shown that Smith knew of the condition of the roof. In the case under consideration it was not shown to be the duty of the decedent to call for props. It was the duty of the loaders to shoot down and remove the coal and then prop the roof. The slate did not fall from above the coal which the decedent was engaged in cutting at the time of the injury. It fell from above the coal which he had undercut two days before. In the meantime the loaders had come into the room and removed the coal and had attempted to prop the roof. The mining engineer and foreman were also in the room the day before. They had ample opportunity to do the propping. The case is clearly one where the company was under the duty to exercise ordinary care to furnish the decedent a reasonably safe place to work by doing the necessary propping, and falls within the rule laid down in the case of Williams Coal Company v. Cooper, 138 Ky. 287, 127 S. W. 1000. When the decedent returned to work on the day of the accident he had a right to assume that this duty had been complied with. A servant does not assume the risk of the master's failure to use ordinary care to furnish him a reasonably safe place to work, unless the dangerous conditions are known to him, or are so obvious that a person of ordinary prudence in his situation would have observed and appreciated them. Though one of plaintiff's witnesses says that the decedent knew of the bad condition of the roof, Seal, decedent's helper, says that there was nothing in the appearance of the roof to indicate that it was bad. Defendant's own officers testified to the same effect. Under the circumstances, we conclude that the questions of defendant's negligence and decedent's assumption of risk were for the jury.

2. The company did not plead contributory negligence in general terms, but alleged that the decedent himself removed the props from under the slate which fell. It is insisted that a peremptory should have gone because the evidence conclusively establishes this defense. It is true that defendant's witnesses say that two props were placed under the slate the day before. It is also true that there was some evidence to the effect that two props were found near the slate which fell, and also a hammer which it is claimed was used by the decedent for the purpose of knocking the props down. On the contrary, Seal, the decedent's helper, says that there were no props under the slate and the decedent did not knock them down. The evidence being conflicting, it was for the jury to say whether or not the decedent did knock the props down.

3. The accident occurred in the State of Tennessee and the Tennessee law was pleaded in the original petition. During the trial plaintiff was permitted to file an amended petition, making the allegations of the petition more specific with reference to the measure of damages under the Tennessee law. A lawyer by the name of H. B. Brown was permitted to testify as to the Tennessee law. Both the amended petition and the testimony of Brown were objected to on the ground of surprise, and a motion made by the company to discharge the jury and continue the case. The overruling of this motion is urged as a ground for reversal. As a matter of fact, the amended petition was merely an amplification of the Tennessee law as theretofore pleaded in the original petition. Furthermore, the measure of damages given was that prescribed by the law of this state. There is no substantial difference between our measure of damages and that of Tennessee. When killed the decedent was twenty-six years of age and had an expectancy of 31.93 years. He was earning at the time of his death from $50.00 to $60.00 per month. His probable earning capacity was about $18,000.00. The verdict was for only $1,200.00. Clearly, under these circumstances, the action of the court in permitting the amended petition to be filed, and in refusing to continue the case on the ground of surprise or in giving the Kentucky measure of damages instead of the Tennessee measure of damages, cannot be regarded as prejudicial error.

4. The last ground urged for reversal is the refusal of an instruction limiting the effect of the life tables

which were introduced to show the decedent's expectancy of life. While it has been held that such an instruction, when requested, should be given—Chicago Veneer Co. v. Jones, 143 Ky. 27—we have never held the refusal of such an instruction to be prejudicial error and are not inclined to adopt such a ruling where the verdict, in case of death, is as small as that fixed by the jury in this case.

Judgment affirmed.