# Chesapeake & O. Ry. Co. v. Epling's Adm'r.

(Decided Jan. 24, 1936.)

(As Extended on Denial of Rehearing Feb. 28. 1936.)

BROWNING & DAVIS and J. J. MOORE for appellant.

E. J. PICKLESIMER for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Pike circuit court based on the verdict of a jury in the sum of $1,000, against the appellant, Chesapeake & Ohio Railway Company, arising from the alleged negligent killing of appellee's decedent, Isaac Epling. At about noon on the 6th day of May, 1933, Mr. Epling was run into and knocked off a railroad trestle across Poor Bottom fork of the Marrowbone creek near the town of Lookout in Pike county. The trestle is 118 feet in length and is about 9 feet above the creek bottom. The track is straight for a distance of 883 feet above the trestle, and continues in a straight line for several hundred feet below the trestle. It is a part of the branch line of appellant's railroad running to Hellier. On the occasion in question an engine, with five or six box cars and caboose, had proceeded up the track to Hellier and, without turning the engine, had picked up thirteen loaded coal cars at the head of the engine, and at the time of the accident it was backing down the grade toward Marrowbone Junction, with the caboose and box cars ahead of the engine and thirteen coal cars behind it. The engineer stated that he did

not see the decedent but that his view was obstructed by the box cars. A flagman was standing on the platform of the caboose, at the head of the train, and it is established that he had control of the brakes, through the operation of the conductor's valve on the caboose. It is admitted that Mr. Epling was a tresspasser to whom the appellant owed no duty of maintaining a lookout unless and until his peril was actually discovered. The negligence ultimately relied on as a basis of recovery is the failure of the brakeman to exercise ordinary care to prevent injury to the decedent after his presence on the trestle was discovered.

Plaintiff had the burden of establishing (1) that the brakeman actually saw the decedent's peril, and (2) that, having discovered his position of peril, he could, by the exercise of ordinary care, have avoided the injury with the means at his command. Plaintiff established that the track was straight at the point of the accident and for some distance on either side of that point; that the view was unobstructed; and that the brakeman was seen looking down the track in the direction of the decedent. Where there is no direct evidence on the subject, proof of these facts has repeatedly been said by this court to be sufficient to take the case to a jury on the question whether or not the peril of an injured trespasser was actually discovered. Louisville & N. R. Co. v. Bell, 108 S. W. 335, 32 Ky. Law Rep. 1312; Johnson, Adm'x, v. Sandy Valley & E. Ry. Co., 181 Ky. 539, 205 S. W. 576; Becker v. Louisville & N. R. Co., 110 Ky. 474, 61 S. W. 997, 22 Ky. Law Rep. 1893, 53 L. R. A. 267, 96 Am. St. Rep. 459.

However, actually seeing the decedent is not the only element to be established; there must be a discovery of his peril. The testimony indicates that at the time when the caboose rounded the curve and came onto the straightaway the decedent was some little distance below the trestle, where, by simply taking a step or two to the side of the track, he could have reached a position of safety. This was established by the plaintiff's own witnesses. It was not until the head of the train had passed the county road crossing, about 300 feet from the east end of the trestle, and possibly not until the head of the train had reached the center of the station platform at Lookout, less than

150 feet from the east end of the trestle, that the decedent commenced walking thereon. In other words, it was not until this moment that the decedent's peril became one from which he could not readily extricate himself. Accepting every inference to be drawn from the plaintiff's evidence and assuming that the decedent was actually seen by the brakeman during all of this period, it is clear that it could not reasonably be said that there was any duty on the part of the brakeman to stop the train or to slacken its speed until the decedent was actually on the trestle. The only evidence in the record as to the distance within which the train might have been stopped is the testimony of appellant's engineer, who says that it was actually stopped in a space of about 320 feet from the time that the brakes went on in emergency. It is nowhere shown how long it was after the brakes were applied before they "took hold." This may have been a matter of several seconds. Obviously, the caboose was within less than 320 feet of the point of the accident before decedent was actually in serious peril and before the brakeman could possibly have become conscious of the decedent's danger. Almost instantaneous action, after discovery of Mr. Epling's position, would be required of him even to slacken the speed of the train before the point at which the accident occurred was reached. It is admitted that a whistle on the caboose was sounded several times as the train traversed the distance from the curve to the trestle, but during this entire period, the decedent, in utter disregard of his own safety, was busily engaged in making his own position more and more perilous by walking rapidly over the trestle, head-on into the approaching train. Even if we assume from the facts established, and from the unexplained failure of the defendant to introduce the brakeman as a witness, that the peril of the decedent was actually discovered, the proof still falls short of showing that the brakeman could by the exercise of ordinary care, with the means at his command, have avoided the accident. This was an essential link in plaintiff's case. Chesapeake & O. Ry. Co. v. Conley's Adm'x, 261 Ky. 669, 88 S. W. (2d) 683; Braden's Adm'x v. Liston, 258 Ky. 44, 79 S. W. (2d) 241, and cases there cited. This case differs from the Conley Case, supra, in that here actual discovery of the decedent's peril is relied on as a basis for the ap-

plication of the "last clear chance" doctrine, while in the Conley Case there was no discovery, but, on the proof, a duty to maintain a lookout. However, the opportunity to discover the decedent's peril in the case at bar is not shown to have existed for such a length of time as to have enabled the appellant to avoid the accident with the means at its command, even if we infer actual discovery.

Aside from all of the foregoing, the petition specifically limits its charge of negligence to the acts of the engineer in charge of the train and makes no mention of the failure of the brakeman to see the decedent. Lang v. Cooper, 262 Ky. 407, 90 S. W. (2d) 382. The engineer was sued jointly with the railroad company, but the trial court gave a peremptory instruction in his favor at the close of the plaintiff's testimony. The engineer himself testified for the defendant that he was on the fireman's side of the engine, looking down the track, but that there were six box cars and a caboose ahead of him and that he did not see the decedent. There was no evidence that the engineer could have done anything to stop the train even if he had seen Mr. Epling. It follows that the trial court should have peremptorily instructed the jury to find a verdict for the defendant.

Judgment reversed.