## Louisville & N. R. Co. v. Pennington's Adm'r.

May 16, 1939.

ASHBY M. WARREN, H. T. LIVELY, J. MILLER WHITE, C. S.. LANDRUM and CRAFT & STANFILL for appellant.

S. E. DUFF, JESSE MORGAN and PAUL GROSS for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Appellant, Louisville & Nashville Railroad Company, is appealing from a judgment on a verdict of a jury awarding T. M. Pennington, administrator of the estate of his deceased son, Sol Pennington, $3000 damages for his death. Pennington's body was run over by one of appellant's freight trains in Perry county, Kentucky, on May 5, 1936. He was 36 years of age. In urging reversal appellant insists that the court erred in not instructing the jury peremptorily to return a verdict in its favor, that erroneous instructions were given to the jury, and that the instruction offered by it should have been given.

There is no dispute that Sol Pennington's body was run over by one of appellant's trains. There is no evidence, however, as to whether he was dead or alive at the time the train passed over his body. Ralph Deaton, a boy 16 years of age, was the only witness who testified that he saw Pennington's body on the track before the train passed over it. He testified that:

"Q. 14. Did you see the train that struck Sol Pennington? A. Yes sir.

"Q. 15. What first attracted your attention, Ralph to that train? A. The train whistled, blowed.

"Q. 16. Where was the train when you first observed her to say she whistled? A. At the cattle guard.

"Q. 17. How far was the cattle guard away from where you were? A. About three hundred yards.

"Q. 18. You think it was about three hundred yards? A. Yes sir; about that I think.

"Q. 19. Begin there, Ralph, and tell the jury everything you saw and heard from the time you first observed the train coming until after the man was run over? A. When I walked up on the railroad track the train whistled and I stepped up on the track and looked down the track and seen the train and my eye flashed up the railroad and I seen this man and I run and motioned to the men on the train and neither one of them didn't see me and I run fifty or sixty yards up over the bank and the train was on him by that time; the train passed me as I turned over and then I walked back up to the edge of the railroad to where he was killed. He was laying on the railroad track when I first seen him.    *    *    *

"Q. 22. You were looking on the left side of the train? A. On the left as she came up.

"Q. 23. That was your right as you went down? A. Yes sir.

"Q. 24. And you were trying to motion for the train to stop? A. Yes sir: I was motioning trying to see somebody but they were not looking out and didn't see me.

"(Defendant objects to that question because it was a leading question; objection overruled; defendant excepts).

"Q. 25. About how far did the train, the engine, etc. pass over the body after it struck him? A. The engine and ten car lengths.

"Q. 26. The engine and ten car lengths went over him? A. Yes sir."

Hiram and Hiramie Couch testified that they were on a county road, which was from 100 to 300 feet above the railroad track, when the train passed them. They were approximately 450 yards from the scene of the accident. They did not state, however, that they saw the body on the track, nor was it shown that they saw the Deaton boy. Both of these witnesses stated that the

train was going around a curve, and that the engineer had his head out the window looking up the track. The engineer was on the outside of the curve. The train was running between 30 and 35 miles an hour. Hiramie said that when he reached the point where the body was found he could see the place where he had been on the road when the train passed him. He stated also that, if the train whistled, he did not remember it.

The record does not reveal as to when or how the train crew discovered Pennington's body on the track. In view of the fact that the train was going around the curve, it is probable that the fireman, whose position in the cab was on the inside of the curve, first discovered the body. In any event, the train stopped, but not until the engine and 10 cars had passed over the body, according to the testimony of the Deaton boy. There is no showing that by the use of ordinary care the engineer could have stopped the train before passing over Pennington's body after it was discovered on the track. Counsel for appellee insist, however, that it is apparent that the trainmen saw Pennington's body on the track. They argue that, since the whistle was blown 300 yards distant from where the body was struck, according to the Deaton boy's testimony, and since there was no road crossing at the place or near the place where the whistle was said to have been sounded, it is obvious that the whistle was sounded because an object was seen on the track. They point out also that the train did stop after the engine and some of the cars had passed over Pennington's body, showing, of course, according to this contention, that the body was seen by the trainmen.

We have examined this record carefully and have reached the conclusion that the trial court erred in overruling appellant's motion for a peremptory instruction at the conclusion of appellee's evidence. Pennington was a trespasser upon appellant's track, and the only duty owed him was the exercise of ordinary care to avoid injuring him after his peril was discovered. Granting that the train whistle was blown, there is no showing that it was blown because Pennington's body was seen by the train crew, and certainly Pennington did nothing thereafter to lessen his peril, assuming he was alive at that time. Ralph Deaton stated positively that he attempted to attract the attention of the trainmen, but that they did not see him. The testimony of the Couches as to the engineer looking out of the cab as the train

was going around the curve can not be taken to mean that he could have seen Pennington's body on the track, even if he had been looking in that general direction, in view of the fact that the train was rounding a curve. What the Couches might have seen from the position they occupied on the county road can have no bearing on what the engineer could have seen, granting that he was looking out the window as the engine rounded the curve.

An examination of the circumstances pertaining to the cases of Louisville & Nashville Railroad Company v. Spicer's Adm'r, 187 Ky. 601, 219 S. W. 1047, and Louisville & Nashville Railroad Company v. Bell, 108 S. W. 335, 32 Ky. Law Rep. 1312, relied upon by appellee, shows them to be materially different from those in the case at bar. In the Spicer case it was shown that the engineer saw an object on the track which he believed to be a man. In that case the train was on a straight track and the evidence showed that both the engineer and the fireman were looking along the track for some 300 or 400 yards before Spicer was hit. In the Bell case the train was approaching a trestle. It was shown that the fireman was looking ahead of the train and had a view of the trestle from which Minnie Bell jumped, thereby causing her injuries. It was proven by two witnesses that the engineer was looking down the track as he approached the trestle, and that he had a view of the trestle for 325 yards along a practically straight track. Several sharp blasts of the whistle were sounded. The trainmen testified, however, that the whistle was blown for the trestle, that the engineer could see only approximately 150 yards in front of him because of a curve in the track, and that they knew nothing of the accident until later in the day.

The facts and circumstances in the case at bar bring it well within the scope of those opinions where it has been held that a peremptory instruction in favor of the Company was proper, because it was not proven that the life was lost through any negligence on the part of the Company. Goodman's Adm'x v. Chesapeake & Ohio Railway Company, 252 Ky. 366, 67 S. W. (2d) 469, and cases cited therein. See, also, Johnson v. Sandy Valley & E. R. Company, 181 Ky. 539, 205 S. W. 576; Louisville & Nashville Railroad Company v. Horton, 187 Ky. 617, 219 S. W. 1084; Chesapeake & Ohio Railroad Company v. Justice's Adm'r, 253 Ky. 600, 69 S. W.

(2d) 1024; Chesapeake & Ohio Railway Company v. Conley's Adm'x, 261 Ky. 669, 88 S. W. (2d) 683; Chesapeake & Ohio Railway Company v. Butcher's Adm'r, 263 Ky. 45, 91 S. W. (2d) 551.

Having reached the conclusion that a peremptory instruction should have been given in appellant's favor, it is unnecessary for us to pass upon other questions raised by appellant.

Judgment reversed for proceedings consistent with this opinion.