## Cincinnati, N. O. & T. P. Ry. Co. v. King's Adm'x.

Dec. 10, 1940.

Flem D. 'Sampson, Judge.

Tye, Siler, Gillis & Siler, M. L. Galvin and Carl M. Jacobs for appellant.

A. M. Caddell, J. C. Bird and Pope & Upton for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Tun King, age 44, was run over and killed by one of the appellant's double-header freight trains around 6:30 a. m., Sunday, July 18, 1937. He was lying on the track in a drunken condition at the time he met his death. King's wife qualified as his administratrix and brought this action seeking to recover $2,900, alleging that the Railway Company had negligently caused her husband's death. The trial resulted in a verdict for $2,500 in Mrs. King's favor. This appeal is being prosecuted from the judgment on that verdict.

The train, consisting of 41 cars, was going about 45 miles an hour. Three members of the train crew, the engineer and fireman on the first engine, and the fire-

man on the second engine, t⸍ stified that as the train rounded a curve some 1,300 to 1,400 feet from where King's body was found, they saw an object on the track and that they watched it until it passed out of their view and was run over. The track was straight, with a slight dip in it. The day was clear, though there was some evidence that it was a little hazy, and that the track was shaded at the place where King was lying. As to what the object was thought to be, there was the not uncommon speculation in such cases of it looked like ''a big bulk humped up,'' ''a dead calf,'' ''a sheep or dog,'' ''a piece of brown paper,'' or ''a meal sack.''

As to the discovery of King's peril, that is, when the object was thought to be a man, the record presents the following testimony: The fireman on the first engine testified that when they were within 500 feet of the object, ''I seen it was a man's leg drawing up in the track. He had one leg drawn up. I hallooed at the engineer it was a man and he shut the engine off, applied the brakes.'' This witness testified further that he thought the engineer heard him, because as he hallooed it was a man, the engineer shut off the engine and applied the brakes. The engineer testified that he watched the object continuously after coming around the curve and that he did not get any signal from the fireman. In answer to the question as to what he did from the time the train came around the curve until it passed over the object, he said:

''I saw this bulk, we could not tell what it was. The first thing I saw that could be told what anything was was a dog; we were in about 500 feet to tell really what it was. By the time I went through my operations of the engine to stop it my engine had passed over it.

''Q. 55. When you were 500 feet from the object could you then tell it was a man? A. Yes, sir. It was a bulk of some kind. I could not tell it was a man but it was a bulk. I didn't know it was a man until after they came back and told me.''

The dog referred to was standing by King. The train did not stop until it had gone some 1,500 feet beyond where King was lying on the track. The engineer testified that the train could not have been stopped within 500 feet and that he did everything he could have

done to stop it. The engineer on the second engine testified on direct examination that the train ought to have been stopped in 100 to 150 yards.

The foregoing statement as to how King met his death does not represent a summary of all the evidence offered, nor has it been presented in the light of the chief question urged for reversal by appellant, namely, that it was entitled to a peremptory instruction. The reason for its presentation is that we may better understand the objection raised to Instruction No. 1. We think this instruction was erroneous, and that the case must be reversed for that reason. All other questions are expressly reserved, save that as to the failure on the part of the court upon motion of the Railway Company to admonish the jury with reference to Wigglesworth's Tables.

Instruction No. 1 reads as follows:

"If you believe from the evidence that the agents and servants of the defendant company, as trainmen, in charge of the freight train mentioned in the evidence at the time and place mentioned in the pleadings and proof, as it proceeded north on this occasion, saw Tun King, or any object which they knew, *or should have known* was a human being upon the railroad tracks in time to have avoided, by the use of ordinary care with all the means at their command, hitting, striking and killing said King, and shall further believe from the evidence that defendant Railway Company and its said agents and servants failed to do so and that by reason of such failure, if any, on their part, said engine and train ran upon, against and over the body and limbs of said Tun King, killing him, then your verdict will be for the plaintiff, Nannie Belle King, and you will so find.

"Unless you so believe, you will find for the defendant, New Orleans & Texas Pacific Railway Company."

The objection is directed to the inclusion of the italicized words, "or should have known." The appellee vigorously defends the instruction upon the ground that the evidence and the circumstances presented in this case warrant the inclusion of the words in question.

King was a trespasser, and, as we have frequently

said in such cases, the only duty owed to him was the exercise of ordinary care to avoid injuring him after his peril was discovered. Louisville & N. R. Co. v. Pennington's Adm'r, 278 Ky. 436, 128 S. W. (2d) 934; Henry's Adm'r v. Illinois C. R. Co., 282 Ky. 101, 137 S. W. (2d) 1081, and cases cited therein. But, as pointed out in Wimsatt's Adm'x v. Louisville & N. R. Co., 235 Ky. 405, 31 S. W. (2d) 729, 733, it is not left alone to the statements of those in charge of the train on the question of discovery of peril. It is said in the Wimsatt case:

"* * * Facts and circumstances, as well as direct evidence, may contradict the statement of those in charge of the train that they did not discover the trespasser in time to avoid the injury, and, in every case where the facts and circumstances render the evidence conflicting, it is a question for the jury to determine whether the peril of the trespasser was discovered in time to avoid the injury by the exercise of ordinary care. It is not required of those in charge of a railroad train that they slacken the speed of the train upon the discovery of some object on or near the track not known to be a human being, but, upon the discovery of such an object, the trainmen should observe it from the time of the discovery until they may, in the exercise of ordinary care, determine whether it is a human being."

We think the instruction, without the words "or should have known," and with the word "believed" substituted for the word "knew" before the italicized words, was adequate. The approval of the italicized words would constitute a wide departure from our established rules as to the responsibility of a Railway Company under circumstances such as those presented herein. See Stanley's Instructions to Juries, Section 660.

The court should have admonished the jury upon motion of the Railway Company with reference to the Wigglesworth Tables, but his failure to do so was not reversible error. Proctor Coal Company v. Price's Adm'r, 172 Ky. 627, 189 S. W. 923; Carter Coal Company v. Love, 173 Ky. 49, 190 S. W. 481; Stanley's Instructions to Juries, Section 16, Note 15.

Wherefore, the judgment is reversed with directions to set it aside, and for proceedings consistent with this opinion.