## Frankfort & C. R. Co. et al. v. Holder's Adm'r.

March 19, 1948.

12

Fowler & Fowler, Stoll, Muir, Townsend, Park & Mohney and Fred Lisanby for appellants.

Bradley & Bradley for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—
Reversing.

Douglas Holder, a boy fourteen years of age, was killed when run over by a train of defendant railroad company on one of its trestles. His administrator recovered $7,000 for his death against both the engineer and the company. They appeal on a number of grounds, but it is only necessary to consider the motions for a peremptory instruction at the conclusion of plaintiff's evidence.

Defendant company operates a short stretch of railroad between Paris and Frankfort. The train involved was known as "The Kentucky Cardinal," a single coach operated by diesel electric power. The engine and passenger compartments are in one unit weighing forty-five tons. This train was proceeding from Paris to Frankfort.

The tragedy occurred about 8:30 on the night of May 11, 1946. It was dark and cloudy. The Holder boy was struck and killed on a 90 foot trestle between Stamping Ground and Switzer. The track at this point runs east and west, but since the parties refer to it as north and south, we shall do so. The train approached from a northerly direction. It came around a rather sharp curve to the right, several hundred feet north of the trestle. Because of a cut on this curve, the engineer's view of the trestle in daylight is obstructed until the train reaches a point 499 feet away from it. The track is straight for 284 feet to the structure.

On the night in question, the train rounded the curve at a speed of from 40 to 45 miles an hour. As it emerged from the cut, the engineer observed a light ahead of him which appeared to be somewhere on or near the tracks. This is his testimony:

"Q. Now when you got to the point where you in the day-time could see the trestle, did you see anything down the track? A. I saw a light bobbing.

"Q. You saw a light bobbing? A. Yes, sir.

"Q. Now at the time that you saw that light what did you think it was? A. Well, there was several things entered my mind,—a flag or someone walking on the right-of-way or someone maybe just going across the track, or something like that, across the right of way. I could not tell exactly for I could not see through the night.

"Q. One of the things that entered your mind was it was someone flagging? A. Yes, sir."

The engineer stated that he thereupon made a service, or normal, application of his brakes in order to bring his train under control in the event it became necessary to stop for someone wishing to come aboard. It is customary on this route to pick up passengers at any point along the line.

The engineer testified that he did not see anyone ahead of him until his train had straightened out after leaving the curve and his headlight shown on the trestle. He then observed two persons on it who appeared to be running in his direction. Just about that time

the light disappeared. According to his statement, he immediately applied his brakes in emergency. At that time the train was 297 feet from the trestle, as shown by subsequent measurement.

The train did not stop until it had passed over the structure. The Holder boy had been struck and killed. The evidence is not clear as to just where the boy was at the time he was run over. The parties apparently agree that it was near the south end of the trestle, although there is evidence that another boy who was with him at the time had managed to reach a place of safety at the north end.

The Holder boy and his friend were on a frog-gigging expedition. They had walked southward on the tracks and onto the trestle. The Holder boy was carrying a gasoline lantern, which was the light seen by the engineer. The boys heard the train coming and attempted to get off the trestle at one end or the other. The deceased stumbled and fell, extinguishing the light.

It is undisputed that the boys were trespassers on the tracks, and the liability of appellants, if any, could only be based upon the "Last Clear Chance" doctrine. That is, the engineer's duty was to avoid striking the deceased by the exercise of ordinary care in the use of the means at his command, after discovery of the boy's peril. Chesapeake & O. Ry. Co. v. Epling's Adm'r, 262 Ky. 609, 90 S. W. 2d 719; Louisville & Nashville Railroad Co. v. Mann's Administrator, 227 Ky. 399, 13 S. W. 2d 257. As stated in the latter case, 227 Ky. at page 401, 13 S. W. 2d at page 258:

"It is admitted that the deceased was a trespasser, therefore the burden rests upon his administrator to show that the agents of the defendant in charge of this train discovered, not only the presence, but also the peril, of the deceased in time by exercise of ordinary care to have avoided injury to him by use of the means they had at hand."

In Cincinnati, N. O. & T. P. Ry. Co. et al. v. Humphrey's Adm'r, 281 Ky. 432, at page 440, 136 S. W. 2d 537, 541, we held:

"The only duty resting upon the defendant and owing the deceased, when, it is conceded, he was a tres-

passer upon its track, was that imposed by the 'last clear chance' rule, requiring those in charge of defendant's train, not to keep a lookout for a trespasser upon its track to discover if he had put himself in a place of danger, but only, if they did actually discover the presence of the trespasser or deceased on the track and that he was in a position of peril, to then seek to avoid injuring him by exercising ordinary care and using all the means at their command.''

The plaintiff pitched his case principally upon the contention that the engineer "knew of the possibility of the deceased being in a position of danger'' at the time he first observed the bobbing light ahead. This *possibility* is clearly beyond the scope of the settled rule above stated.

Let us assume that as soon as the train came out of the cut 500 feet from the trestle and the engineer observed a light in the vicinity of the tracks, he knew of the presence of some person carrying the light. Where was that person? The most logical surmise would be that he was near the track flagging the train to become a passenger. Plaintiff himself emphasizes this probability, but it disproves his case. If someone is attempting to stop the train to become a passenger, he not only must know of its approach, but would presumptively be in a place of safety. It is obvious that the appearance of the light alone did not apprise the engineer that anyone was in a *position of peril.*

There are numerous cases where those in charge of a train actually observed a trespasser on the tracks. We have consistently held that this mere presence, which always creates the *possibility of peril,* does not impose on the railroad's agents any duty to stop the train. See Reynolds' Adm'r v. Cincinnati N. O. & T. P. Ry. Co. and F. W. Pearce, 148 Ky. 252, 146 S. W. 416; Louisville & Nashville Railroad Co. v. Weiser's Administrator, 164 Ky. 23, 174 S. W. 734; Chesapeake & O. Ry. Co. v. Epling's Adm'r, 262 Ky. 609, 90 S. W. 2d 719.

Plaintiff suggests that the appearance of the light indicated that someone was *on the trestle* where he would be in a position of danger. This does not follow because there was in front of the train 500 feet of open track, and the trestle itself was only 90 feet long. (In-

cidentally, it was only 17 feet high in the middle.) Under the facts shown, we must conclude that the mere appearance of the light did not impose on the engineer a duty to take emergency action.

Plaintiff's case must then be based upon a failure to exercise reasonable care after the *discovery of the deceased's peril*. In cases of this character it is proper to consider the circumstances which tend to prove that the peril was discovered in time to avoid it. Wimsatt's Administratrix v. Louisville & Nashville Railroad Co. et al., 235 Ky. 405, 31 S. W. 2d 729; Cincinnati, N. O. & T. P. Ry. Co. v. King's Adm'x, 284 Ky. 694, 145 S. W. 2d 1053. The direct evidence in the case, i. e., the testimony of the engineer, was to the effect that he could not have avoided the accident. Was there sufficient circumstantial evidence to make an issue for the jury on this question? Plaintiff's contentions are: (1) The engineer did not apply his brakes in emergency at the time he discovered the boy's peril, (2) he did not sand the tracks when he applied his brakes, and (3) subsequent tests proved that the train could have been stopped before it reached the deceased's position.

In support of the contention that the engineer did not apply his brakes in emergency, plaintiff relies on the testimony of three passengers on the train who stated that they did not notice any abruptness as the train slowed to a stop. The testimony of these witnesses is ineffective for three reasons: (1) They all said they were not paying attention to the movement of the train, (2) the roadbed is rough at this point and normally jostles the passengers, and (3) there was no showing that the application of emergency brakes would result in exceptional physical shock to the passengers.

The argument that the failure to use sand, to assist in braking the wheels, constituted a negligent failure to use all the means at the engineer's command, is without support in the evidence. Sand is used for the purpose of preventing the slippage of wheels on the track both in starting and stopping trains. It serves no purpose if the wheels do not lose traction. While there was some evidence that the tracks were wet on this occasion, the testimony of the engineer that his wheels did not slip is uncontradicted by either direct or circumstantial evi-

dence. There is, therefore, no proof that the use of sand would have increased the braking power or enabled the train to stop more quickly.

The plaintiff relies on evidence that the train could have been stopped sooner because subsequently two other trains actually were stopped within a shorter distance at the same locality. Appellants objected strenuously to this "test" evidence. We will not decide the question of its competency, but are convinced that it was totally inadequate to prove the plaintiff's case.

Without going into detail, the record shows these subsequent stops occurred under conditions so materially different that they throw no light upon what could have been done on the occasion in question. We deem it necessary only to point out that the accident involved in this law suit took place at night, whereas, both of the "test" runs were in broad daylight. In addition, the speeds of the trains were not the same, and in one case the type of train was entirely different. As stated in Lapp, Administrator, v. Louisville, Henderson & St. Louis Railway Co., 178 Ky. 647, at page 656, 199 S. W. 798, 802:

"Some point is also sought to be made out of the fact that an experiment made some time after this accident showed that a train similarly equipped and loaded as was the train that killed Taylor could have been stopped in a shorter distance than this train after the engineer discovered the presence of Taylor on the track. But we attach little importance to this experiment, because the uncontradicted evidence shows that the conditions under which the experimental test was made were not the same as the conditions prevailing when the accident occurred."

See also Henry's Adm'x v. Illinois Cent. R. Co. et al., 282 Ky. 101, 137 S. W. 2d 1081.

Plaintiff insists that the case of Cincinnati, N. O. & T. P. Ry. Co. v. King's Adm'x, 284 Ky. 694, 145 S. W. 2d 1053, is conclusive on the question of his right to have this case submitted to a jury. There it appeared that a drunken person lying on the tracks was run over and killed in broad daylight by defendant's freight train. An object on the track had been observed

over 1300 feet ahead of the train by both the engineer and fireman. There was evidence that the object was discovered to be a man when the train was 500 feet away; that the engineer failed to catch the emergency signal given by the fireman; and that the train could have been stopped within 300 to 450 feet.

The Court in that case did not decide defendant's right to a peremptory instruction, but reversed the judgment because of error in the instructions. While by implication the decision indicated that there was sufficient evidence to go to a jury, the issue we have before us was not decided. More important, however, is the vast difference between the facts in that case and those shown here. A vital distinction is the difference between daylight and darkness, materially affecting the opportunity to observe a person in a position of peril. In addition, the circumstances with respect to what was observed and what action was taken by the engineer and fireman are completely unlike those we have before us. That case is clearly not controlling here.

A tragedy of this sort naturally draws on the sympathy of us all. The law, however, would have no sound base if administered as an emotional art. Its settled principles do not impose liability without fault. Plaintiff failed to prove any wrong committed by appellants, and there was no issue for the jury to decide. A peremptory instruction should have been given in their favor. All other questions are reserved in the event of another trial and a material change in the evidence.

The judgment is reversed for proceedings consistent herewith.